CHARLES W. THOMPSON v. GREAT NORTHERN RAILWAY
COMPANY.

April 27, 1900.

Nos. 11,801—(30).

**Railway—Personal Injury to Conductor.**
This is an action to recover damages for the loss of the plaintiff's right
leg caused by the giving way of one of the rods or grab irons consti-
tuting the ladder on the side of a car. *Held:*

**Inspection of Grab Irons.**
1. That the defendant's inspectors, when inspecting the ladder, were
not bound to apply any physical force to the grab irons to discover latent
defects, unless a careful inspection by the eye disclosed some defect or
probable weakness. But, if such careful observation would have dis-
closed that one of the grab irons, or the bolt fastening it to the car, was
out of place, the inspectors would have been guilty of negligence if they
failed to discover the open condition of the grab iron, and apply all
reasonable physical tests to determine the cause of its abnormal con-
dition, and whether such condition was a safe one.

**Verdict Sustained by Evidence.**
2. That the verdict for the plaintiff is sustained by the evidence.

**Refusal to Charge Jury.**
3. That the trial court did not err in refusing certain requests for in-
struction to the jury, and that the charge as given was correct.

**Verdict not Excessive.**
4. That an award of $7,500 as damages to the plaintiff is not so ex-
cessive as to justify any interference with the verdict.

Action in the district court for Kandiyohi county to recover
$25,000 for personal injuries. The case was tried before Powers,
J., and a jury, which rendered a verdict in favor of plaintiff for
$7,500. From an order denying a motion for judgment notwith-
standing the verdict or for a new trial, defendant appealed. Af-
firmed.

*C. Wellington,* for appellant.
*F. D. Larrabee,* for respondent.

STARP, C. J.

The plaintiff on January 21, 1897, was a freight train conductor on one of defendant's trains. While attempting in the line of his duty to climb to the top of a car and using the ladder on the side thereof, one of the rounds gave way, whereby he was thrown to the ground, and the wheels of the car passed over his right leg, inflicting such injuries that it was necessary to amputate the leg below the knee. This action was brought to recover damages for such injuries on the ground that they were caused by the negligence of the defendant in failing properly to inspect and keep in a safe condition the car in question. Verdict for the plaintiff for $7,500, and the defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial. The assignments of error raise three general questions for our consideration. They are: Is the verdict supported by the evidence? Did the trial court err in its instructions to the jury? Are the damages awarded excessive?

1. The defendant's first contention is that there was no credible evidence tending to show any actionable negligence on its part.

Except as to one matter, there is little conflict in the evidence. It is practically admitted that the plaintiff was injured as he testified, that he was in the discharge of his duty as the servant of the defendant at the time, and that he was not guilty of contributory negligence. The ladder from which the plaintiff fell was made of several curved iron rods some eighteen inches long and five-eighths of an inch in circumference. Each end of the rods was flattened, with a hole through it, and was one-half of an inch in thickness. These rods or "grab irons," as they are usually called, were fastened to the side of the car by iron bolts passing through each end, and screwed into the corner post and side of the car, with the inside of the head of the bolt pressing against the outside of the flattened end, and the inside of the latter against the outside of the car. The plaintiff stepped upon the lower grab iron of the ladder, and the end which was fastened to the corner post of the car gave way by reason of the breaking of the screw bolt, and he was thrown down, and injured, as stated. One piece of the bolt remained in the corner post, and the other hung in the grab iron. Both were pre-

served, and were received in evidence on the trial of this case, and exhibited, with the corner post, to this court, on the hearing of this appeal. There was an old flaw or crack in the bolt at the joint where it broke, extending from one side to its center, which was the cause of the bolt breaking and the grab iron giving way. This defect could not have been discovered by a visual inspection of the grab irons, which is the usual and approved method of inspection, unless the screw bolt or grab iron were out of place.

This brings us to the pivotal and disputed question in this case, which is: Could the defendant, by the exercise of ordinary care, have discovered before the accident the unsafe condition of the grab iron? It was the duty of the defendant to inspect the grab irons, and the answer to the question depends upon whether the evidence is sufficient to support a finding that the defendant might have discovered the condition of the grab iron by a reasonably careful inspection. Two inspections, by different inspectors, were given the car in question,—one before it was loaded, and the other after it was placed in the train,—and neither of the inspectors found any defects in any of the grab irons. The system of inspection adopted by the defendant and followed by the two inspectors was by observation or sight as to the body of the car, including the grab irons, and, as to the wheels, by sounding them with a hammer. It must be conceded that the system is not a negligent one, and, if the inspectors carefully observed the grab irons, and found none of them out of place, and nothing to indicate any defect or weakness therein, the inspection was a reasonably careful one, and all that the law demanded. The inspectors were not bound to take off the grab irons, or apply any other physical force to discover latent defects, unless a careful inspection by the eye would have discovered some defect or probable weakness. If such careful observation would have disclosed that either the grab iron or the bolt in question were out of place, it would have been a danger signal, imperatively requiring further investigation, and the application of all necessary and reasonable physical tests to determine the cause of the abnormal condition of the grab iron, for upon the safe condition of the ladder depended human life and limb.

The evidence on the part of the plaintiff tending to show that the

grab iron or the bolt holding it to the side of the car was out of place when the car was inspected, briefly summarized, is this: The plaintiff's brother testified that he removed the part of the bolt which remained in the side of the car, and that the upper end thereof—that is, the point where the break occurred—was flush or even with the outside of the car, and that the part of the bolt which remained in the hole in the grab iron was just one and one-eighth of an inch in length from the inside of the bolt head. If this be true, it would conclusively follow that at the time the inspection was made, either the end of the grab iron was pressed out from the side of the car at least one-half of an inch, or that the inside of the head of the bolt was out the same distance from the outside of the grab iron, for the latter was only one-half of an inch in thickness. That the upper part of the bolt was just one and one-eighth of an inch in length, measuring from the inside of its head, is admitted. But the defendant claims that the testimony of the plaintiff's brother is absolutely incredible, because, as it is claimed, he testified on a former trial of this action to a different state of facts as to the part of the bolt remaining in the car, and that the physical facts disclosed by an examination of the two parts of the bolt and the car still conclusively show that the point at which the bolt was broken was in fact at least one-half of an inch below the outside of the car, as testified to by defendant's witnesses who repaired the car after the accident. If it be true that the break in the bolt was one-half of an inch below the outside of the car, then it would follow that the grab iron rested firmly against the side of the car, that the bolt was in its proper place, and that, at the time the car was inspected, there was nothing which an inspection by observation could have disclosed indicating a defect or probable weakness in the grab iron.

The trouble, however, with this claim of the defendant, is that, while there were discrepancies in the testimony of the plaintiff's witness, still the so-called "physical facts" corroborate, in a measure, his testimony on the last trial, for a careful examination of the two parts of the bolt and the corner sill of the car to which the grab iron was fastened discloses with reasonable certainty that the break in the bolt occurred at a point not more than one-fourth of an

inch below the outside of the car. This would leave a space of one-fourth of an inch between the outside of the car and the inside of the grab iron, or the bolt out of place the same distance. If such were the case, it would seem to follow conclusively that the trained eye of an experienced inspector ought to have detected the defect at once, and that he was negligent if it did not do so. But, in any event, this was a question for the jury. The defendant's own evidence indicates quite clearly that such would have been the case. The superintendent of its car shops testified, in effect, that an inspector passing by a car looks over the grab irons, the same as he would the door fastenings. Any grab iron which is out of place is easily detected, for it will drop down or away from the sheathing of the car,—tip out or tip down. Upon the whole record we are of the opinion that the evidence fairly sustains the finding of the jury by their verdict to the effect that the defendant might have discovered, before the accident, the unsafe condition of the grab iron by a reasonably careful inspection of the car, and that it was, therefore, guilty of negligence in the premises.

2. The defendant assigns as error the refusal of the court to give to the jury its third request, which was this:

*"Further, that the duty incumbent upon the defendant to inspect the car in question is shown to have been performed, by the undisputed evidence in the case, by two inspectors, made on the day that the car was put into the train of which Thompson was the conductor, going westward,* and that all the defendant was required to do in that behalf was to use ordinary and usual care, such as is used by railway companies in the general transaction of their business in that respect; and that, if the defendant performed its duty in that behalf, then it is not liable in this action."

The request was rightly refused, for the reason that it contains two independent propositions, one of which—the one we have italicized—was manifestly erroneous, for it, in effect, declares as a matter of law that the defendant had discharged its duty as to the inspection of the car.

It is further urged that the trial court erred in refusing the defendant's fifth request, which was this:

"Further, you are not permitted to erect in your own minds any

particular standard or grade, or decide any particular method of doing business to be negligent, unless the evidence in the case convinces your minds that the method adopted by the company in this respect was in and of itself such a method as a man of ordinary care and prudence, or a railway company exercising ordinary care and prudence in that respect, under those circumstances, would not have adopted and practiced."

It was not error to refuse this request, for it was misleading. The request deals with the method or system of inspection adopted by the company. The question, however, at issue was not whether the system of inspection by observation adopted by the defendant was the proper one, but the question was whether its inspectors properly executed the system; that is, carefully observed the exterior or open condition of the car, including the grab irons and bolts.

Error is also assigned as to the giving of certain instructions by the trial court which were excepted to on the ground that they left the question of what would be a proper inspection of the car to be determined by the jury "out of their own minds," not from the evidence in the case. The whole charge of the trial court on the question must be considered together. So considering it, it is clear that the exceptions are without merit. The charge, taken as a whole, was a clear and correct statement of the law applicable to the case.

3. The last claim to be considered is that the damages awarded are excessive. The award is certainly liberal. But the plaintiff was, at the time of the accident, about 40 years old, in the prime of manhood, earning, as a railway conductor, $90 a month. The injury he received totally incapacitated him from following his chosen occupation, and he must seek a new field of labor, handicapped by the loss of his good right leg. We are not prepared to say that the damages awarded him are so excessive as to justify us in disturbing the verdict.

Order affirmed.